# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

GLOBAL LAB PARTNERS, LLC,
a Florida Limited Liability Company, and
GLOBAL LAB GROUP, LLC,
a Florida Limited Liability Company,

Plaintiffs,

v.                                                    Case No.:   3:18-cv-00246

DIVIDEND HEALTH LLC,
a Texas Limited Liability Company,
DIRECTMED DX LLC,
a Texas Limited Liability Company,
and TY H. BRUGGEMANN, individually,
Defendants.
_____/

## EMERGENCY PETITION FOR A TEMPORARY RESTRAINING ORDER AND INCORPORATED MEMORANDUM OF LAW

Plaintiffs, Global Lab Partners, LLC ("GLP") a Florida Limited Liability Company and Global Lab Group, LLC ("GLG") a Florida Limited Liability Company (collectively referred to herein as the "Plaintiffs") pursuant to Rule 65 of the Federal Rules of Civil Procedure, petitions the Court for entry of a temporary restraining order and preliminary injunction on an emergency basis against Defendants Dividend Health, LLC ("Dividend Health"), a Texas Limited Liability Company DirectMed DX, LLC ("DirectMed"), a Texas Limited Liability

1

Company and Ty H. Bruggemann ("Bruggemann") (collectively referred to herein as the "Defendants").

## I.     Preliminary Statement

Plaintiffs seek to temporarily and permanently enjoin Defendants, and all those acting in concert with them, from: (1) misappropriating funds invested by Plaintiffs pursuant to a Membership Interest Purchase Agreement ("MIPA") entered into between the parties; (2) from continuing to violate the non-compete provision of the MIPA by reverting the DirectMed agreement into DHTX; (3) from taking any action to jeopardize the Plaintiffs' interests in DHTX Partners, LLC ("DHTX") by transferring, disposing of, encumbering, or otherwise disposing of any assets of DHTX or ceasing any business operations of DHTX; and (4) ordering Defendants to provide Plaintiffs with reasonable access to company books and pursuant to the MIPA.

Contemporaneous with the filing of this Motion, Plaintiffs have filed supporting affidavits of the managers of GLP and GLG that represent the majority of the membership interest of DHTX.  The present application for a temporary restraining order and preliminary injunction is made so as to, to the greatest extent possible, preserve the *status quo* and prevent the subject of the action, the operations and assets of the DHTX company, from being dissipated.

## II. Factual Background

### a. Formation of DHTX

The DHTX entity was formed for the primary purpose of marketing and processing medical tests for urinary tract infections, drug screening, and anatomic pathology through Cedar Creek Labs, LLC, a Texas Limited Liability Company ("Cedar Creek") a facility wholly owned by DHTX. The entity DHTX also wholly owns Dividend Health Diagnostics, LLC, a Texas Limited Liability Company ("DHD")

On December 22, 2016, Plaintiff GLP purchased a 50% ownership interest in DHTX, a Texas LLC. *See* MIPA attached hereto as Exhibit A. The purchase price was One Million Dollars ($1,000,000.00). *See* id at pg. 2. The remaining 50% was owned by Defendant Dividend Health. Defendant Bruggemann owns 100% of Defendant Dividend Health and is its Manager. Subsequently, through a Share Transfer and Limited Dilution Agreement dated March 22, 2017, both Plaintiff GLP and Defendant Dividend Health each sold 2.5% ownership interest (for a total 5%) to Plaintiff GLG. *See* Share Transfer and Limited Dilution Agreement attached hereto as Exhibit B.

### b. Relevant Provisions of the MIPA

Section 4.1.6 of the MIPA provides that:

> "the Purchaser and its employees, agents, accounting and legal representatives … to have reasonable access at reasonable times … to the books, records … and other business and assets of DHTX, DHD and Cedar Creek, wherever located."

Section 6.1 of the MIPA provides in relevant part that:

> "DHTX, DHD, and Cedar Creek…possesses all requisite limited liability company power and authority and all licenses, permits and authorizations necessary to own and operate its property, to carry on DHTX, DHD and Cedar Creek Business…

*See* Exhibit A at pg. 10.

Section 9.1 of the MIPA provides that:

> "the Parties agree that each owes the other a fiduciary duty not to compete with DHTX, DHD, CEDAR CREEK or GLOBAL LAB PARTNERS LLC, and shall not, directly or indirectly, operate, own any interest in, manage, control, participate in (whether as an officer, director, employee, investor, agent, representative or otherwise), consult with, render services for, or in any manner engage in any business similar to DHTX, DHD and Cedar Creek or Global Lab Partners business, within the Non-competition Geographical Area …."

*See* Exhibit A at pg. 15-16.

Section 9.2 of the MIPA provides that:

> "During the Non-compete and Non-Solicitation Period (defined as the period during with Global Lab Partners holds an equity stake in DHTX and for a period of two years thereafter), the Parties shall not directly or indirectly through another entity …. (b) induce or attempt to induce any customer, supplier, licensee, licensor, franchisee, owner, lessor or other business relation of DHTX, DHD or Cedar Creek or any of its Affiliates to cease doing business with DHTX, DHD and

4

> Cedar Creek or such Affiliate, or in any way interfere with the relationship between any such customer, supplier, licensee, licensor, franchisee, owner or other business relation and DHTX, DHD and Cedar Creek or any of its Affiliates …."

*See* Exhibit A at pg. 16.

Section 12.1 of the MIPA provides that:

> "DHTX, DHD and Cedar Creek and the Seller will execute and deliver such further instruments of conveyance and transfer and take such additional action as the Purchaser may reasonably request to effect, consummate, confirm or evidence the transfer to the Purchaser of the Purchased Membership Interest and any other transactions contemplated hereby."

*See* Exhibit A at pg. 17.

### c. Violations of the MIPA

#### i. Interference with the Cirrus Contract

Prior to the purchase of ownership interest in DHTX, Bruggemann represented to GLP and GLG representatives that a contract between DHTX and Cirrus DX, Incorporated ("Cirrus"), a Delaware corporation, was in the process of negotiation. *See* affidavits of Eni De La Osa and James W. Dillard, Sr. attached hereto as Exhibit C.

The Cirrus contract was for financing that Cirrus required to complete development, testing and certification of certain medical tests. The Cirrus contract was vital to the decision by Plaintiffs to purchase an ownership interest in DHTX as the DHTX business was to be grown in tandem with Cirrus. Specifically, while

5

Plaintiffs would be responsible for marketing the medical tests, providing financing, and providing the Cedar Creek Labs facility, both Cirrus and DHTX would own the actual tests and Cirrus owns equipment necessary to process the laboratory results.

On January 18, 2018 it was discovered that Bruggemann had negotiated a separate contract with Cirrus through DirectMed, a Texas LLC wholly owned by Defendant Bruggemann and managed by Defendant Dividend Health.  When confronted with this the following week, Bruggemann agreed to transfer ownership of DirectMed to DHTX and its Cedar Creek Lab facility. This never occurred. Instead, Bruggemann subsequently sent an e-mail list of demands, including $6,000,000.00 in new capital, $150,000.00 "to personally reestablish solid financial ground at [his] home," and demand for a salary for himself and some of his associates. *See* email attached hereto as Exhibit C.

### ii.  Failure to File Corporate Records

On February 9, 2018 Plaintiffs discovered that Defendants Dividend Health and Bruggemann had failed to file the required organizational documents with the Secretary of State for the State of Texas evidencing Plaintiffs membership interest and subsequent appointment as a manager of DHTX evidencing the purchase of DHTX, DHD, and Cedar Creek. This was understood to have been the responsibility and undertaking of Defendants Dividend Health and Bruggemann pursuant to Section 12 of the MIPA, based on emails and conversations regarding general

housekeeping items held by GLP's in house counsel, Richard Beckish and his point of contact with Defendants, John Hunter.

Defendants Dividend Health and Bruggemann were required to accomplish, simultaneously, the filing of all documents legally required to evidence Plaintiffs ownership interest in and appointment as a manager of DHTX, DHD, and Cedar Creek in the State of Texas and the transfer of the CLIA lab license to Cedar Creek. In addition to Defendants Dividend Health's and Bruggemann's failing to complete the filing of the company documents and records it was discovered as of February 9, 2018 that Cedar Creek Labs, LLC did not have an assignment of the Clinical Laboratory Improvement Amendments of 1988 (CLIA) license from Mediclab Clinical Laboratory, LLC or other related entity for Cedar Creek to operate a laboratory operation under CLIA, in contradiction to the representations made in Section 6.1 of the MIPA.

### iii.  Denial of Access to DHTX Books and Records

In July of 2017, Plaintiffs noticed that, despite reports of brisk orders for testing, no profits were being generated by DHTX. Instead, DHTX, was forced to incur $1,250,000.00 in debt through two loans from Servis First Bank. As the financial picture worsened, what followed were a series of telephone calls and e-mails requesting inspection of the books. This culminated with a letter to DHTX and Ty Bruggemann from GLP, dated November 2, 2017, formally requesting copies

of Accounts and transactions ledgers for DHTX and Profit and Loss statements for 2017. *See* letter attached hereto as Exhibit D. These records were never entirely furnished. Plaintiff GLP ultimately demanded that the books and operations be transferred to its representative, Clyde Patroni. This never occurred.

In January 2018, analysis comparing QuickBooks entries for DHTX expenses to monies directly invested by Plaintiff GLP (approximately $2.6 million, including the Servis First Loan) plus monies collected from operations (approximately $270,000), revealed that approximately $420,000.00 was unaccounted for. It has also been discovered that there is approximately Eleven Million Dollars ($11,000,000) in billing but Plaintiffs are being told that only 1.5 million is collectable. This is far short of the 30% ratio of billing to collections common to the industry.

At this point, Plaintiff GLP has put several million dollars into DHTX, with no return and have continued to fund payroll for the DHTX and Cedar Creek labs. Plaintiffs believe that monies have been funneled directly to Bruggemann and his associates without authorization either directly, indirectly and/or through third party entities owned or controlled by Bruggeman, using third party closely held companies or LLC's to act as his private conversion of funds vehicle although representing to Plaintiffs otherwise. Moreover, Bruggemann's agreement with Cirrus through DirectMed is in direct violation of Section 9 of the MIPA. As of this week,

Defendant Bruggemann was threatening to shut DHTX down, and has the ability under the DHTX Company Agreement to deadlock GLP at every turn due to the "Supermajority" requirements. Further, because of non-performance by DirectMed, the contract with Cirrus, is in jeopardy of cancellation.

The above-described actions by Bruggemann and DirectHealth violated section 4.1.6 (reasonable access to company records) and sections 9.1- 9.2 (non-compete) of the MIPA and the DHTX Company Agreement.

### III. Argument

#### a. Jurisdiction and Venue.

Jurisdiction in the Northern District of Florida, Pensacola Division, Escambia County is appropriate as section 13.6 of the MIPA provides in pertinent part:

> "Governing Law. All other issues and questions concerning the construction, validity, enforcement and interpretation of this Agreement and the exhibits and schedules hereto shall be governed by, and construed in accordance with, the laws of the State of Florida without giving effect to any choice of law of conflict of law rules or provisions that would cause the application of the laws of any jurisdiction other than the State of Florida. In furtherance of the foregoing, the internal law of the State of Florida shall control the interpretation and construction of this Agreement (and all schedules and exhibits hereto), even though under that jurisdiction's choice of law or conflict of law analysis, the substantive law of some other jurisdiction would ordinarily apply. The Parties agree that jurisdiction for enforcement of this Agreement shall exclusively reside in the courts of Escambia County, Florida."

*See* MIPA Exhibit A page 19.

Pursuant to 28 USC section 1332 there being a diversity of jurisdiction whereas Plaintiffs are Florida Limited Liability Companies and the Defendants individually Ty Bruggemann and the Texas LLC companies are residents of the State of Texas and the parties have agreed that venue and jurisdiction are in Escambia County, Florida this action to enforce provisions of the MIPA are appropriate in the U.S. District Court for the Northern District of Florida Pensacola Division.

### b. Plaintiffs are Entitled to a Temporary Restraining Order and Preliminary Injunction Against the Defendants.

Under well-established law, a plaintiff is entitled to a temporary restraining order if: (1) there is a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction will not be adverse to the public interest. In light of the facts and issues presented herein, these four factors weigh in favor of the issuance of a temporary restraining order in this case. *All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc.*, 887 F.2d 1535, 1537 (11th Cir.1989); *SunTrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1265 (11th Cir. 2001); *Schiavo v. Schiavo* 403 F.3d 1223, 1225-26 (11th Cir.2005), ("the same four factors apply to the determination of whether to grant a temporary restraining order or preliminary

injunction:"); citing *Winter v. NRDC. Inc.*, --- U.S.----129 S.Ct. 365, 374, 172 L.Ed.2d 249 (2008).

### i. There is a Substantial Likelihood that Plaintiffs Will Succeed on the Merits of Their Claims.

Because the Defendants have engaged in conduct that is in direct violation of the MIPA there is a substantial likelihood that Plaintiffs will succeed on the merits of their claims.

Here, there is no dispute that (1) Defendant Dividend Health, through Defendant Ty Bruggemann, executed the MIPA; (2) the MIPA provisions at issue – the reasonable access to books and records and non-compete provisions – are supported by legitimate business interests, including the protection of company funds and the protection of substantial business opportunities; and (3) Defendants breached the MIPA by denying Plaintiffs access to DHTX books and records, and by entering into a competing agreement with Cirrus.

The importance and legitimacy of these protections cannot be overstated. Plaintiff GLP invested in DHTX based upon the representations that DHTX was securing a contract with Cirrus. Instead, Bruggemann, breached the covenant not to compete and secured a contract between Cirrus and DirectMed (a company Bruggemann wholly owns) for the exact same business opportunity he represented he was negotiating for DHTX. The legitimacy of these interests cannot be

questioned – without the restrictive covenants contained within the MIPA, DHTX simply could not remain in business.

Plaintiffs have presented prima facie evidence that both Defendants Bruggemann and Dividend Health have breached the MIPA. Notably, while DirectMed was not a party to the MIPA, it is wholly owned by Defendant Ty Bruggemann – they are one in the same and Ty Bruggemann has been forming these companies as his alter ego to personally whisk away money that is not rightfully nor lawfully his, having converted the money of the Plaintiffs to his own use without authorization to do so. In fact, all Defendants are located at the same address, an office suite paid for by DHTX. Bruggemann recently speaks in an email (*See* Exhibit D), in a blackmail like statement that he will not transfer the units of DirectMed to DHTX until he receives Six Million Dollars ($6,000,000), plus another $150,000 for his personal use at home from the Plaintiffs.

### ii. Irreparable Injury

Defendant Bruggemann caused and continues to cause irreparable injury to Plaintiffs through his formation of a contract with Cirrus through Defendant DirectMed. As a result, DHTX has not and cannot benefit from the expected business relationship with Cirrus nor profit from the use of the Cedar Creek lab for toxicology samples if the Defendants continue to raid the coffers of DHTX and convert that money to their own use. The Cirrus-DHTX deal was the driving force

behind Plaintiff's decision to purchase interest in DHTX. Moreover, the Cirrus business relationship is now in jeopardy due to DirectMed's failure to pay monies due to Cirrus under their separate exclusivity agreement formed behind Plaintiff's backs by Bruggemann. When confronted with his actions, Bruggemann threatened to cease all DHTX operations.

Every day that DirectMed jeopardizes the contract with Cirrus, is one more day that Plaintiffs watch their business stumble to a certain death. Without immediate injunctive relief, there is little likelihood that DHTX can survive as an ongoing operation.

### iii. The Injury to Plaintiffs from Defendant's Misconduct Far Outweighs Any Impact that an Injunction May Cause Defendant.

As shown above, Defendants actions will likely result in the demise of DHTX. The relief requested herein seeks to prevent Defendants from causing any additional damage to DHTX and its business operations. Plaintiffs are merely requesting that Defendants Bruggemann and Dividend Health comply with the MIPA in protecting the business interest of DHTX – an entity partially owned by Defendant Dividend Health and place the units of DirectMed under the ownership and control of DHTX and file the appropriate documents evidencing Plaintiffs right place as manager and member of the majority of DHTX units. Thus, little to no harm will befall Defendants by granting the temporary restraining order.

### iv. Enjoining Defendants Will Serve the Public Interest.

Finally, the only public interest at issue in this case is that of enforcing fiduciary duties, reasonable contracts, and protecting a business's investment. The covenants signed by Defendants prohibit them from restricting the Plaintiffs' access to books and records and soliciting competing business opportunities. Defendants cannot possibly argue that they should be allowed to breach their fiduciary duty not to solicit DHTX business opportunities because it would somehow further the public interest. No such right is recognized under the law. Plaintiffs have, accordingly, satisfied the four elements necessary to obtain an award of injunctive relief.

### IV. Conclusion

For the foregoing reasons, Plaintiffs respectfully requests that the Court:

(1) Enter an order preliminarily and permanently enjoining Defendant Ty Bruggemann and Dividend Health from:

a. Continuing to violate the non-compete provisions of the MIPA by transferring the units of DirectMed to DHTX; and

b. Taking any action to jeopardize the Plaintiffs' interests in DHTX by transferring, disposing of, encumbering, or otherwise disposing of any assets of DHTX or ceasing any business operations of DHTX.

(2) Order Defendants Ty Bruggemann and Dividend Health or other third-party entities owned and controlled by Defendants to provide Plaintiffs with reasonable access to DHTX financial books and records pursuant to the MIPA.

(3) Require Defendants to pay all reasonable costs and expenses expended by Plaintiffs in bringing this action, including reasonable attorneys' fees; and

(4) Order all other remedies that the Court believes just and warranted.

February 9, 2018

>Respectfully submitted,
>/s/ Erica A. Reed
>Erica A. Reed, Esq.
>Florida Bar Number: 101676
>Attorney for Defendant
>Law Office of Erica A. Reed
>997 South Palafox Street
>Pensacola, FL 32502
>Telephone: (850) 361-1500
>ereed@reedforjustice.com
>Attorney for Plaintiffs

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on February 9, 2018, I electronically filed the foregoing Petition for Temporary Restraining Order with the Clerk of the Court and served by email at ty@dividendhealth.com United States Mail and service of process by personal delivery to Ty Bruggemann, personally, Ty Bruggemann, as Manager and Registered Agent, Dividend Health, LLC, DirectMed DX, LLC, 600 North Carroll Avenue, Suite 100, Southlake, TX 76092 insert other defendants and addresses.

/s/ Erica A. Reed
Erica A. Reed, Esq.
Florida Bar Number: 101676
Attorney for Defendant
Law Office of Erica A. Reed
997 South Palafox Street
Pensacola, FL 32502
Telephone: (850) 361-1500
ereed@reedforjustice.com
Attorney for Plaintiffs