# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

**GLOBAL LAB PARTNERS, LLC, et al.,**

    **Plaintiffs,**

**v.**　　　　　　　　　　　　　　　　**CASE NO. 3:18cv246-MCR/CJK**

**DIRECTMED DX, LLC, et al.,**

    **Defendants.**

_____

## ORDER

Pending is Plaintiffs' Motion for Expedited Discovery in support of its Motion for Preliminary Injunction. Plaintiffs want to depose Diane Loftin, a third-party billing consultant for DHTX Partners, LLC ("DHTX"), and Kyle Armantrout of Cirrus DX, LLC ("Cirrus") on an expedited basis. They also seek documents from both on an expedited basis. For the reasons discussed below, Plaintiffs' motion is granted in part and denied in part.

Plaintiffs filed a Motion for Preliminary Injunction on February 12, 2018,[1] seeking to enjoin Defendants from continuing to violate various non-compete provisions in a Membership Interest Purchase Agreement ("MIPA") relating to the

---

[1] Plaintiffs originally requested a temporary restraining order but the Court converted the motion to a one for a preliminary injunction. *See* ECF No. 5.

CASE NO. 3:18cv246-MCR/CJK

acquisition of DHTX, and taking any action to jeopardize the Plaintiffs' interest in DHTX by transferring, disposing of, encumbering, or otherwise disposing of any assets of DHTX or ceasing any business operations of DHTX, and also requiring Defendants Ty Bruggemann ("Bruggemann") and Dividend Health, LLC ("Dividend Health") to provide Plaintiffs with reasonable access to DHTX's financial books and records.

Plaintiffs allege that Dividend Health and its sole owner Bruggemann induced them to purchase 50-percent of DHTX by representing that DHTX had a letter of intent in place with Cirrus for the transfer of proprietary laboratory testing material to DHTX. ECF Nos. 12 at 7, 12-3 at 2. The agreement for the co-ownership of laboratory testing material between DHTX and Cirrus never materialized, however. Plaintiffs claim that instead Bruggemann formed DirectMed DX, LLC[2] ("DirectMed") and entered into a Product Development Agreement with Cirrus for the same laboratory testing material. ECF No. 12 at 9. Plaintiffs also allege that Bruggemann withdrew $22,500 from funds Plaintiffs transferred to DHTX in order to fulfill some of DirectMed's obligations to Cirrus.

---

[2] According to the allegations, Plaintiffs understood that DirectMed was owned by DHTX. *Id.* at 10, 12.

Bruggemann maintains that DirectMed's agreement with Cirrus ensured that DHTX would be able to utilize Cirrus's laboratory testing material and as part of that Cirrus subsequently entered into a Lab Services Purchase Agreement with Cedar Creek Labs, a wholly-owned subsidiary of DHTX. However, Plaintiffs claim that despite this agreement, no profits were generated from the Lab Services Purchase Agreement and, instead, DHTX was forced to obtain loans to fund Cedar Creek Labs. In January 2018, Plaintiffs discovered that DirectMed was not owned by DHTX but was instead owned and controlled by Bruggemann, which they claim violated the non-compete provisions of the MIPA. Based on this information, Plaintiffs requested Bruggemann to transfer his interest in DirectMed to DHTX. Bruggemann agreed to do so for approximately six million dollars and a salary of fifteen thousand dollars per month. According to Defendants, although the parties negotiated on this proposal, it was not viable because Cirrus objected to GLP's indirect ownership of DirectMed after Cirrus found out that some of GLP's indirect owners allegedly had a criminal background.

Plaintiffs claim that Bruggemann ultimately failed to deposit funds under various loan agreements and diverted over $50,000 in collections from Cedar Creek Labs. In addition, Plaintiffs claim that although Cedar Creek Labs had average monthly charges of $3,000,000 during the months of September 2017 through

January 2018, Cedar Creek Labs' monthly charges for February 2018 dropped to $148,882.76 and no co-pay or deductible payments have been remitted from patients. Plaintiffs analyzed the QuickBook entries for DHTX in January 2018 and discovered that $420,000 remains unaccounted for. *Id.* at 12. In addition, Plaintiffs claim that DHTX's General Ledger reflects payments of $92,678.76 to Dividend Health for payroll expenses for the period January through March 2017 and $45,000 to Cirrus for unspecified expenses in July and September 2017.

The Federal Rules of Civil Procedure provide that discovery *may commence before* the parties have engaged in a discovery conference, if ordered by the court. Fed. R. Civ. P. 26(d), (f). "Control of discovery is committed to the sound discretion of the trial court and its discovery rulings will be reversed only where they are arbitrary or clearly unreasonable." *Williamson v. U.S. Dep't of Agriculture*, 815 F.2d 368, 373 (5th Cir. 1987); *see Johnson v. Bd. Of Reagents*, 263 F.3d 1234, 1269 (11th Cir. 2001) (Courts have broad discretion in the scheduling of discovery). A court may permit the parties to conduct expedited discovery where the party establishes "good cause" for such discovery. *Platinum Mfg. Intern., Inc. v. UniNet Imaging, Inc.*, No. 8:08-cv-310-T-27MAP, 2008 WL 927558, at *1 (M.D. Fla. April 4, 2008). Factors to be considered in evaluating good cause include (1) whether a motion for preliminary injunction is pending; (2) the breadth of the requested

discovery; (3) the reason(s) for requesting expedited discovery; (4) the burden on the opponent to comply with the request for discovery; and (5) how far in advance of the typical discovery process the request is made. *GTO Access Sys., LLC v. Ghost Controls, LLC.*, No. 4:16CV355-WS/CAS, 2016 WL 4059706, at *3 (N.D. Fla. June 20, 2016).

Plaintiffs request "[a]ll records pertaining to DHTX, Cedar Creek Laboratory, DirectMed LLC, or Cirrus DX, Inc" from Loftin. ECF No. 18-1 at 2. Plaintiffs state that the expedited discovery is necessary because "the billing practices, and particularly unaccounted-for money, is at the crux of the dispute between the parties and goes to the heart of the irreparable harm claimed by Plaintiffs" and that "to date, … Diane Loftin … has been unavailable and uncooperative." ECF No. 18 at 6. Although the Court finds that Plaintiffs' request for expedited discovery as to Loftin is overly burdensome in its current form, the Court modifies the request to meet the needs of the case.³ Plaintiffs have specifically alleged the following: (1) payments of $92,678.76 to Dividend Health for payroll expenses for the period January through March 2017, (2) payments of $45,000 to Cirrus for unspecified expenses in July and September 2017, (3) a substantial drop in the monthly charges of Cedar Creek Labs for February 2018, and (4) non-remittance of co-payments and

---

³ A motion for preliminary injunction is pending and a hearing has yet to be scheduled.

CASE NO. 3:18cv246-MCR/CJK

deductibles from patients. Therefore, considering the Plaintiffs' need to prove these allegations in support of their motion for preliminary injunction, the Court limits the Plaintiffs' document request to:

1. All records pertaining to payments in the amount of $92,678.76 to Dividend Heath for payroll expenses for the period spanning January through March 2017;

2. All records pertaining to payments in the amount of $45,000 to Cirrus during July and September 2017; and

3. All laboratory billing records and monthly charge records for the past 90 days.

This limited discovery is proportional to the needs of the case and is not overly burdensome to Defendants or the third-party billing consultant.[4] Loftin should be prepared to produce these documents and sit for a deposition by May 31, 2018.

With respect to the Plaintiffs' request for expedited discovery as to Armantrout, Plaintiffs requests him to appear for a deposition and to produce "[a]ll records, including emails, relating to the 'Product Development and Exclusivity Agreement' between Cirrus … and DirectMed." ECF No. 18-2 at 2. The Court also

---

[4] The Court notes that the request for expedited discovery was made approximately two months after Plaintiffs filed their motion for preliminary injunction but approximately six months before the discovery deadline of October 5, 2018. *See* ECF No. 19.

CASE NO. 3:18cv246-MCR/CJK

finds that this request is overly burdensome in its current form, the Court modifies the request to meet the needs of the case. As Defendants correctly argue, Plaintiffs request encapsulates "essentially every document that these two parties possess related [to] their over year-long business relationship." ECF No. 21 at 5. This is overly broad. However, Plaintiffs more narrowly request documents from Armantrout to address "Bruggemann's decision, *with Armantrout*, to form a contract between DirectMed and Cirrus/Tetracore, as opposed to DHTX and Cirrus/Tetracore. The formation of the DirectMed-Cirrus/Tetracore contract resulted in the asserted breach of the parties non-compete agreement." As discussed above, Plaintiffs allege that Bruggemann breached the MIPA by separately contracting with Cirrus for the co-ownership of the laboratory testing material. Cirrus's decision to end negotiations with DHTX and sign an agreement with DirectMed is relevant to this issue. With this in mind, the Court limits the scope of the document requests to:

1. All communications between Bruggemann and Armantrout regarding any potential agreements between Cirrus and DHTX or Cedar Creek Labs for the co-ownership of laboratory testing material; and

2. All communications between Bruggemann and Armantrout regarding Cirrus's decision to terminate negotiations with DHTX.

This limited discovery is also proportional to the needs of the case and is not overly burdensome on Cirrus or Armantrout.[5]  Mr. Armantrout should be prepared to produce these documents and sit for a deposition by May 31, 2018.

Accordingly, Plaintiffs' Motion for Expedited Discovery is **GRANTED** in part and **DENIED** in part.

**DONE AND ORDERED** this 23rd day of April, 2018.

*M. Casey Rodgers*
_____
**M. CASEY RODGERS**
**CHIEF UNITED STATES DISTRICT JUDGE**

---

[5] *See supra* note 4.